1  **WO**

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   Michelle E. Kaminski,                    )    CIV 12-2202-PHX-MHB
                                             )
10            Plaintiff,                      )    **ORDER**
                                             )
11   vs.                                      )
                                             )
12   Carolyn W. Colvin, Commissioner of the)
     Social Security Administration,          )
13                                            )
              Defendant.                      )
14   _____)

15          Pending before the Court is Plaintiff Michelle E. Kaminski's appeal from the Social

16   Security Administration's final decision to deny her claim for disability insurance benefits

17   and supplemental security income.  After reviewing the administrative record and the

18   arguments of the parties, the Court now issues the following ruling.

19                        **I.  PROCEDURAL HISTORY**

20          On March 24, 2006, Plaintiff filed applications for disability insurance benefits and

21   supplemental security income pursuant to Titles II and XVI of the Social Security Act,

22   alleging disability beginning October 2, 2004.  (Transcript of Administrative Record ("Tr.")

23   at 42-43, 49.)  Her applications were denied initially and on reconsideration.  (Tr. at 42-45,

24   49.)  Thereafter, Plaintiff requested a hearing before an administrative law judge.  (Tr. at 78.)

25   A hearing was held in January 2008, (Tr. at 11-41), and the ALJ issued a decision finding

26   that Plaintiff was not disabled (Tr. at 49-58).  The Appeals Council twice denied Plaintiff's

27   request for review.  (Tr. at 1-4, 59-61.)  Plaintiff then appealed the Commissioner's decision

28   to the United States District Court for the Northern District of Illinois.  In November 2010,

1  that court reversed the ALJ's January 2008 decision and remanded the matter back to the

2  Commissioner under sentence four of 42 U.S.C. § 405(g).  (Tr. at 607-30.)

3         A hearing was held before a different ALJ in September 2011.  (Tr. at 543-97.)  The

4  ALJ issued a new decision finding Plaintiff not disabled in October 2011.  (Tr. at 488-501.)

5  Plaintiff took exception to that decision, (Tr. at 477-80), but the Appeals Council declined

6  to assume jurisdiction in June 2012, making the ALJ's decision the final decision of the

7  Commissioner (Tr. 473-76).  Plaintiff then sought judicial review of the ALJ's decision

8  pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

10        The Court must affirm the ALJ's findings if the findings are supported by substantial

11  evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720

12  (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence

13  means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might

14  accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

15  (1971); see Reddick, 157 F.3d at 720.

16        In determining whether substantial evidence supports a decision, the Court considers

17  the administrative record as a whole, weighing both the evidence that supports and the

18  evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ

19  is responsible for determining credibility, resolving conflicts in medical testimony, and for

20  resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see

21  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably

22  support either affirming or reversing the [Commissioner's] conclusion, the court may not

23  substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

25        In order to be eligible for disability or social security benefits, a claimant must

26  demonstrate an "inability to engage in any substantial gainful activity by reason of any

27  medically determinable physical or mental impairment which can be expected to result in

28  death or which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for

benefits by following a five-step sequential evaluation:

> (1)  determine whether the applicant is engaged in "substantial gainful activity";
>
> (2)  determine whether the applicant has a medically severe impairment or combination of impairments;
>
> (3)  determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
>
> (5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520,

416.920).  At the fifth stage, the burden of proof shifts to the Commissioner to show that the

claimant can perform other substantial gainful work.  See Penny v. Sullivan, 2 F.3d 953, 956

(9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since October 2, 2004 – her alleged onset date.  (Tr. at 490.)  At step two, he found

that Plaintiff had the following severe impairment: obesity, degenerative disc disease,

morton's neuroma, a recent toe fracture, being status-post left shoulder SLAP repair, and a

history of a heel spur.  (Tr. at 490-91.)  At step three, the ALJ stated that Plaintiff did not

have an impairment or combination of impairments that met or medically equaled an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's

regulations.  (Tr. at 491.)  After consideration of the entire record, the ALJ found that

Plaintiff retained "the residual functional capacity to perform sedentary work as defined in

20 CFR 404.1567(a) and 416.967(a) except that: the claimant should not do overhead work;

the claimant should only occasionally reach overhead with her non-dominant left arm; the

claimant should not be exposed to hazards (e.g., unprotected heights and dangerous, moving

machinery); the claimant should not work in a job where driving is an essential or required

1   element; and the claimant should not climb ladders, ropes, scaffolds, or stairs."[1]  (Tr. at 491-

2   99.)  The ALJ determined that Plaintiff was unable to perform any past relevant work, but

3   based on her age, education, work experience, and residual functional capacity, there are jobs

4   that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. at

5   500-01.)  Therefore, the ALJ concluded that Plaintiff has not been under a disability from

6   October 2, 2004, through the date of his decision.  (Tr. at 501.)

7                                           **IV.  DISCUSSION**

8           In her brief, Plaintiff contends that the ALJ erred by:  (1) accepting the medical

9   expert's testimony because the expert had not reviewed the entire record before giving his

10  opinion; (2) failing to properly account for her allegations of pain and fatigue; (3) failing to

11  properly discuss the alleged favorable testimony of the vocational expert; and (4) accepting

12  the opinion of Vidya Madala, M.D., which Plaintiff argues does not support the ALJ's

13  ultimate decision.  Plaintiff requests that the Court reverse the decision of the Commissioner

14  and remand for determination of benefits.

15  **A.      Medical Expert's Testimony**

16          Plaintiff first argues that the ALJ erred by accepting the opinion of William Newman,

17  M.D., an impartial medical expert who testified at the hearing held on September 12, 2011.

18  Plaintiff contends that Dr. Newman failed to review the entire record before giving his

19  opinion and, thus, the ALJ's reliance on his opinion was error.  The Court is not persuaded.

20           The record indicates that before testifying, the medical expert stated that he only had

21  received and reviewed the medical evidence found in exhibits 1-F through 19-F in advance

22  of the hearing.  (Tr. at 549.)  After some discussion on whether the ALJ would read or fax

23  the additional records not received or reviewed by Dr. Newman, the additional records were

24  ultimately sent to the expert via fax. (Tr. at 551-52.) Two recesses were, subsequently, taken

25  to allow Dr. Newman to receive and review the additional records. (Tr. at 551-52.)  When

26

27          [1]  "Residual functional capacity" is defined as the most a claimant can do after
    considering the effects of physical and/or mental limitations that affect the ability to perform
28  work-related tasks.

the hearing went back on the record, the ALJ asked the medical expert to summarize the medical evidence that he had received and reviewed, whereupon the ALJ discussed both evidence that was previously in the record and the newly-received evidence. (Tr. at 552-53.)

Accordingly, notwithstanding the fact that Plaintiff's argument alleges neither a lack of substantial evidence nor a legal error, based on the hearing testimony and the record before the Court, the Court finds no error.

**B.    Plaintiff's Subjective Complaints**

Plaintiff alleges that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so. Under this same heading, Plaintiff also argues that the ALJ did not properly account for her obesity in formulating the residual functional capacity assessment.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant

1   that appears less than candid; (2) unexplained or inadequately explained failure to seek

2   treatment or to follow a prescribed course of treatment; and (3) the claimant's daily

3   activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495

4   F.3d 624, 637-39 (9th Cir. 2007).[2]  The ALJ also considers "the claimant's work record and

5   observations of treating and examining physicians and other third parties regarding, among

6   other matters, the nature, onset, duration, and frequency of the claimant's symptom;

7   precipitating and aggravating factors; [and] functional restrictions caused by the symptoms

8   ... ." Smolen, 80 F.3d at 1284 (citation omitted).

9       At the administrative hearing, Plaintiff testified that she was 5 feet 1 inch tall and

10  weighed 194 pounds. (Tr. at 548.)  She said that she was unable to work because she had

11  daily pain and was unable to sit or stand for a long period of time. (Tr. at 558.)  She stated

12  that she could not lift more than 10 pounds, could sit for about 20 minutes, and could stand

13  for 20 to 30 minutes. (Tr. at 558, 583-86.)  She indicated that her right thumb hurt so that

14  she could not use a can opener. (Tr. at 578-79.)  She stated that she took Tramadol for pain,

15  and stopped taking Vicodin because she had to care for her children. (Tr. at 563-64.)

16      Plaintiff testified that during the day she sat on the couch, colored with her daughter,

17  watched television, and read mystery books and magazines. (Tr. at 568, 590.)  She claimed

18  that some of her medications made her dizzy and drowsy, but admitted she never reported

19  that side effect to her doctors. (Tr. at 575-77.)  She testified that there was no reason that she

20  could not do a job that allowed her to alternate between sitting and standing. (Tr. at 588.)

21      Having reviewed the record along with the ALJ's credibility analysis, the Court finds

22  that the ALJ made extensive credibility findings and identified clear and convincing reasons

23

24  ───────────────

25      [2]  With respect to the claimant's daily activities, the ALJ may reject a claimant's
    symptom testimony if the claimant is able to spend a substantial part of her day performing

26  household chores or other activities that are transferable to a work setting. See Fair v.
    Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  The Social Security Act, however, does not

27  require that claimants be utterly incapacitated to be eligible for benefits, and many home
    activities may not be easily transferable to a work environment where it might be impossible

28  to rest periodically or take medication. See id.

1    supported by the record for discounting Plaintiff's statements regarding her pain and

2    limitations.    Although the ALJ recognized that Plaintiff's medically determinable

3    impairments could reasonably be expected to cause the alleged symptoms, he also found that

4    Plaintiff's statements concerning the intensity, persistence, and limiting effects of the

5    symptoms were not fully credible.  (Tr. at 493.)

6            In his evaluation of Plaintiff's testimony, the ALJ discussed in detail the objective

7    medical evidence finding that said evidence did not support Plaintiff's allegations of

8    disabling symptoms and limitations, and addressed the inconsistencies between Plaintiff's

9    allegations and her activities of daily living and previous admissions.  (Tr. at 492-98); see

10   Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction

11   with the medical record is a sufficient basis for rejecting the claimant's subjective

12   testimony.") (citation omitted); Batson v. Comm'r of Social Security, 359 F.3d 1190, 1197

13   (9th Cir. 2004) (lack of objective medical evidence supporting claimant's allegations

14   supported ALJ's finding that claimant was not credible); Berry v. Astrue, 622 F.3d 1228,

15   1234-35 (9th Cir. 2010) (claimant's activities suggested a greater functional capacity than

16   alleged); Fair, 885 F.2d at 604 n.5 (In assessing the claimant's credibility, the ALJ may use

17   "ordinary techniques of credibility evaluation," such as considering the claimant's reputation

18   for truthfulness and any inconsistent statements in her testimony.).

19           The ALJ first addressed Plaintiff's alleged degenerative facet joint disease/central

20   spinal stenosis with radicular pain to Plaintiff's legs.  (Tr. at 493-96.)  The ALJ documented

21   medical evidence from March 2004 through February 2010, citing to numerous sources and

22   physicians, including, Alexander Kmicikewycz, M.D., Daniel Troy, M.D., Keith L. Schaible,

23   M.D., Roy L. Adair, M.D., Daniel J. Hirsen, M.D., and Mohammad A. Shakir, M.D.  (Tr. at

24   176-218, 219-43, 244-92, 301-06, 310-23, 324-41, 344-52, 358-86, 438-49, 450-52, 453-58,

25   459-64, 465-68, 702-12.)  The ALJ concluded the following, in pertinent part,

26           In sum, the objective evidence discussed in great detail above simply does not
             support the claimant's allegations of disabling and highly severe degenerative
27           facet joint disease and alleged (but never documented) central spinal stenosis
             in the claimant's back, with alleged radicular pain to her thighs and legs, which
28           the claimant alleges causes her to not be able to stand for long, sit for long,

climb, bend drive, or lift more than 10 pounds.  The objective evidence refutes the claimant's allegations of central spinal stenosis, and the unremarkable objective findings described above simply are not consistent with the severe limitations with regards to standing, sitting, climbing, bending, driving, and lifting that the claimant alleges due to this condition.

(Tr. at 496.)  Despite the ALJ's findings, he gave Plaintiff "every possible benefit of the doubt" regarding her allegations and limited her to sedentary exertional level work with the additional limitation that Plaintiff should not work in a job where driving is an essential or required element, and Plaintiff should not climb ladders, ropes, scaffolds, or stairs.  (Tr. at 496.)

The ALJ next discussed Plaintiff's "very recent" left heel spur "that allegedly causes foot pain and difficulty with standing and walking."  (Tr. at 497.)  The ALJ addressed the results of Plaintiff's April 8, 2011 and August 13, 2011 x-rays of Plaintiff's left foot and concluded that "[s]uch relatively unremarkable objective findings simply do not preclude the two hours of standing/walking in an eight hour day that is required by sedentary exertional level work and also do not fully support the severity level of issues that the claimant alleges."  (Tr. at 497.)  The ALJ stated "[t]o the extent that the claimant may have some relatively unremarkable limitations with regards to standing or walking due to this issue or may have some relatively unremarkable pain, such issues have been more than appropriately accommodated for by the limitation of the claimant to sedentary exertional level work" with the additional limitations previously set forth in Plaintiff's residual functional capacity assessment.  (Tr. at 497.)

Then, the ALJ discussed Plaintiff's intermittent and "very recent" right thumb issues, which Plaintiff alleged "makes it hard for her to use a can opener when it is flaring up."  (Tr. at 497.)  First, the ALJ – citing to hearing testimony and activities of daily living – found that Plaintiff's allegations were not fully supported by her own admissions.  (Tr. at 497.)  The ALJ then determined that the objective evidence was largely unremarkable.  (Tr. at 497.)  Citing to records from the Arthritis and Rheumatology Clinic, the ALJ found, among other things, that Plaintiff had completely normal diagnostic imaging done of both hands.  (Tr. at 497, 704-12.)  The ALJ concluded stating, "[w]hile I have not assessed manipulative

1   limitations on the basis of the claimant's mild and intermittent problems with her hands, I

2   note that the limitation of the claimant to sedentary exertional level work with its limited

3   lifting and carrying needs would accommodate any rare, minor, and intermittent issues with

4   regards to the claimant's right hand ... ."  (Tr. at 497.)

5          With regards to Plaintiff's left shoulder, the ALJ stated that he has "accommodated

6   this issue to the extent necessary in the claimant's residual functional capacity assessment

7   to give the claimant every possible benefit of the doubt."  (Tr. at 498.)  Documenting the

8   medical evidence from The Core Institute and Matthew Hansen, M.D., the ALJ found that

9   "[t]he objective evidence shows that the claimant's left, non-dominant shoulder healed well."

10  (Tr. at 498.)  However, to give Plaintiff every possible benefit of the doubt, the ALJ

11  accommodated her by limiting to sedentary exertional level work, with the aforementioned

12  additional overhead work limitations.  (Tr. at 498.)

13         Lastly, the ALJ addressed Plaintiff's allegations that her pain medications make her

14  dizzy and tired, which Plaintiff contended limits her ability to drive.  (Tr. at 498.)  Again,

15  citing to Plaintiff's activities of daily living and hearing testimony, the ALJ found that

16  Plaintiff's allegations were contradictory to her own admissions.  (Tr. at 498.)  Moreover, in

17  discussing the objective evidence, the ALJ found additional inconsistencies in that Plaintiff

18  reported to her treating sources "on more than once occasion that her medications did not

19  cause her to have any negative side effects."  (Tr. at 498.)  In any event, the ALJ again gave

20  Plaintiff "every possible benefit of the doubt" regarding these allegations.  (Tr. at 498.)

21  Specifically, in addition to limiting Plaintiff to sedentary exertional level work, the ALJ

22  concluded that Plaintiff should not be exposed to hazards due to any potential dizziness or

23  tiredness and should not work in a job where driving is an essential element.  (Tr. at 498.)

24         In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's

25  allegations not entirely credible.  While perhaps the individual factors, viewed in isolation,

26  are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor

27  is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors

28  that led to the ALJ's decision.  The Court concludes that the ALJ has supported his decision

to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore, the Court finds no error.

Furthermore, Plaintiff is incorrect when she argues that the ALJ did not account for her obesity in formulating the residual functional capacity assessment.  In fact, the ALJ called the medical expert for the express purpose of investigating the effects of her obesity. (Tr. at 546-47.)  And, Dr. Newman stated that Plaintiff would be able to perform light work if she lost weight, but that, while obese, she would be limited to sedentary work.  (Tr. at 554.) Similarly, the ALJ's decision makes clear that he considered her obesity in issuing the decision.  Obesity was identified as a severe impairment, (Tr. at 490), and the ALJ indicated that he considered the effects of Plaintiff's obesity in evaluating whether Plaintiff met or medically equaled a listing (Tr. at 491).  Further, the ALJ explicitly stated that he considered Plaintiff's obesity in assessing her residual functional capacity assessment.  (Tr. at 491.)  The ALJ concluded his residual functional capacity discussion with the statement, "[t]he limitation of the claimant to sedentary exertional level work is consistent with Dr. Newman's opinion of what the claimant can do given her current obesity ... ."  (Tr. at 499.)  Thus, the Court finds that Plaintiff's claim that her obesity was not considered in combination with her other impairments is not supported by the record.  The Court finds no error.

**C.    Vocational Expert Testimony**

Plaintiff asserts that the ALJ erred in failing to discuss the alleged favorable testimony of the vocational expert.  Specifically, after the ALJ posed hypothetical questions to the vocational expert, Plaintiff's attorney posed additional questions to the witness, in which he included additional limitations to the ALJ's hypothetical questions.  (Tr. at 596-97.)  Plaintiff contends that the ALJ's failure to discuss the vocational expert's testimony regarding these additional limitations was error.  The Court disagrees.

The ALJ is only required to include those limitations in the hypothetical question to the expert that are "supported by substantial evidence."  Robbins v. Soc. Sec. Admin.,466 F.3d 880, 886 (9th Cir. 2006); see Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported

1 but substantial evidence"). Here, the additional limitations at issue were not supported by

2 substantial evidence and ALJ did not include said limitations in his residual functional

3 capacity assessment, so he was not required to include those limitations in any hypothetical

4 questions to the vocational expert or discussion of the vocational expert's testimony. The

5 Court finds no error.

6 **D.    Vidya Madala, M.D.'s Opinion**

7         Plaintiff contends that the ALJ erred in accepting the opinion of Dr. Madala, which

8 Plaintiff argues does not support the ALJ's ultimate decision.

9         In May 2006, state agency physician Dr. Madala completed a Physical Residual

10 Functional Capacity Assessment form. (Tr. at 293-300.) She opined that Plaintiff had the

11 following functional abilities: (1) lift and/or carry 20 pounds occasionally and 10 pounds

12 frequently; (2) stand and/or walk for six hours in an eight-hour workday; and (3) sit for six

13 hours in an eight-hour workday. (Tr. at 294.) Dr. Madala further indicated that Plaintiff had

14 no postural, manipulative, visual, communicative, or environmental limitations. (Tr. at

15 295-97.)

16        In his decision, the ALJ stated, "[w]hile I generally agree with ... Dr. Madala that

17 claimant is capable of doing light exertional level work, I have given the claimant every

18 possible benefit of the doubt in limiting her to sedentary exertional level work." (Tr. at 499.)

19 The ALJ concluded his discussion of Dr. Madala's opinion stating, "[t]he limitation of the

20 claimant to sedentary exertional level work is consistent with Dr. Newman's opinion of what

21 the claimant can do given her current obesity and impairments and also is more generous to

22 the claimant than ... Dr. Madala's opinion[]." (Tr. at 499.)

23        The record, therefore, demonstrates that the ALJ did not accept the opinion of Dr.

24 Madala. Rather, he stated that he generally agreed with Dr. Madala that Plaintiff could

25 perform light work, but he parted from Dr. Madala's opinion by giving Plaintiff "every

26 possible benefit of the doubt" and limited her to sedentary work. (Tr. at 499.) By limiting

27 Plaintiff to sedentary work, the ALJ significantly limited the pool of potential jobs that she

28

1  could perform, a finding which benefitted Plaintiff and increased her chances of being found

2  disabled.  The Court finds no error.

3                                            **V. CONCLUSION**

4        Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for

5  disability insurance benefits and supplemental security income in this case.  The ALJ did not

6  err in accepting Dr. Newman's opinion; the ALJ properly discredited Plaintiff's credibility

7  providing clear and convincing reasons supported by substantial evidence; the ALJ did not

8  err in failing to discuss the vocational expert's testimony regarding the additional limitations

9  posed by Plaintiff's attorney; and the ALJ did not accept the opinion of Dr. Madala and,

10 therefore, did not err.  Consequently, the ALJ's decision is affirmed.

11       Based upon the foregoing discussion,

12       **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social

13 Security be affirmed;

14       **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

15 accordingly.  The judgment will serve as the mandate of this Court.

16       DATED this 21st day of November, 2013.

17

18                                    _Michelle H. Burns_

19                                    Michelle H. Burns
                                      United States Magistrate Judge